IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**FRED L. JOHNSON,**

    Plaintiff,

v.    Civil Action No. **3:17CV339**

**PRISON MEDICAL PROVIDER,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Fred L. Johnson, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Johnson names as defendants: Niraj V. Kelore, Orthopedic ("Dr. Kelore"); Vincent Gore, Doctor ("Dr. Gore"); Mohammad Suddiqui, Doctor ("Dr. Suddiqui"); and, Prison Medical Provider.[2] The matter is before the Court on the Motions to Dismiss filed by Dr. Kelore, Dr. Suddiqui, and Dr. Gore, the Court's own review under 28 U.S.C. § 1915(e)(2), and Johnson's Motions for Declaratory Judgment. For the reasons stated below, the Motions to Dismiss (ECF Nos. 32, 36, 41) will be GRANTED, and Johnson's Motions for Declaratory Judgment (ECF Nos. 45, 46, 47) will be DENIED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Defendant Prison Medical Provider has not yet appeared in this action.

# I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or

a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS

In July of 2014, Johnson was confined in Deerfield Correctional Center. (Compl. 3, ECF No. 1.)[3] During that month, Johnson "fell in the kitchen at Deerfield Correctional Center and informed the officer that was working in the kitchen of the fall, and at that time, he alerted medical what had happened." (*Id.*) Johnson "land[ed] on his shoulder," and "his collar bone and his rotary

---

[3] The Court employs the pagination assigned to Johnson's submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Johnson's submissions.

3

cuff gave away." (*Id.*) The doctors at Deerfield Correctional Center did not do "anything to fix the problem, not until almost (2) two years later."[4] (*Id.*)

Johnson has "more problem[s] with it now [than] [he] had before they [did] the surgery, because now when [he] feel[s] the pain all they want [him] to do is [to] put in another request form and come to sick call." (*Id.*) "By the [in]adequacy of later treatment, [Johnson's] condition was damaged further," and there was a "delay for 19 months providing surgery." (*Id.* at 4.) Additionally, "[d]octors familiar with [Johnson's] painful condition . . . fail[ed] to inquire into and treat [Johnson's] pain, except by injection," and "[took] an 'easier but less efficacious' course of treatment." (*Id.*)

Defendant Prison Medical Provider is "under (Anthem) which has been at all times, under contract with [the] Virginia Department of Corrections." (*Id.* at 2.) "Prison Medical Provider violated [Johnson's] Eighth Amendment right to medical care." (*Id.* at 4.)

Defendants Dr. Kelore and Dr. Suddiqui are "doctor[s] employed by Deerfield Correctional Center." (*Id.* at 2.) Johnson "went to [Dr. Kelore] more than (6) six times and nothing was done to fix the problem, and by his action, [he] left [Johnson] with more problems now [than] before they work[ed] on it." (*Id.*) Johnson contends that Dr. Kelore "prolong[ed] the medical treatment,

---

[4] The Court notes that Johnson does not provide any allegations as to the specific dates on which Defendants provided allegedly inadequate medical care. Because there is no explicit statute of limitations for 42 U.S.C. § 1983 actions, courts borrow the personal injury statute of limitations from the relevant state. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (*citing Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2019). Therefore, Johnson was required to have filed his original complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08CV138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (*quoting Nasim*, 64 F.3d at 955). Johnson signed his original complaint on April 7, 2017, and the Court deems the complaint filed as of this date. *See Houston v. Lack*, 487 U.S. 226, 276 (1988). Thus, Johnson is barred from bringing any claim which accrued prior to April 6, 2015.

4

[which] has given [Johnson] more damage and now the use of his shoulder is weak and with no strength to hold something for a long period of time [and] instead [he] keep[s] dropping things." (*Id.*)

Dr. Suddiqui did "treatment before he knew what the problem was and sent [Johnson] to physical therapy, and [Johnson] informed them that there was more pain [than] what was the actual complaint." (*Id.*) Additionally, "[o]nce [Johnson] informed the medical staff, they explain[ed] that it wasn't a medical emergency and that [Johnson] would have to put in for sick call to see the doctor. . . . [T]he doctor answer[ed] that [Johnson] had a frozen shoulder, but knew all the time what was wrong." (*Id.*)

Defendant Dr. Gore is a "doctor employed by Greensville Correctional Center." (*Id.* at 2–3.) Dr. Gore "order[ed] shots to [Johnson's] shoulder instead of trying to fix the problem [and] all they [did] was to cover it up . . . ." (*Id.*)

Based on the foregoing allegations, the Court construes Johnson to raise the following Eighth Amendment[5] claims for relief:

> Claim One: Dr. Kelore "prolong[ed] [Johnson's] medical treatment" by providing medical care to Johnson at more than six appointments, "[which] has given [Johnson] more damage and now the use of his shoulder is weak." (*Id.* at 2.)
>
> Claim Two: Dr. Suddiqui provided medical treatment to Johnson "before [Dr. Suddiqui] knew what the problem was," and Dr. Suddiqui "knew all the time" that Johnson "had a frozen shoulder." (*Id.*)
>
> Claim Three: Dr. Gore "order[ed] shots to [Johnson's] shoulder instead of trying to fix the problem." (*Id.* at 3.)
>
> Claim Four: Prison Medical Provider violated Johnson's "right to medical care." (*Id.* at 4.)

Johnson seeks monetary damages, as well as injunctive relief and declaratory relief. (*Id.* at 5.)

---

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

5

## III. ANALYSIS

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

7

### A. Serious Medical Condition

Johnson's allegations about his medical needs lack precision. Johnson contends that he "fell in the kitchen at Deerfield Correctional Center," and that he "land[ed] on his shoulder" and "his collar bone and his rotary cuff gave way." (Compl. 3.) Johnson further contends that doctors at Deerfield Correctional Center and Greensville Correctional Center did not do "anything to fix the problem, not until almost (2) two years later and now [he] [has] more problem[s] with it now [than] [he] had before they [did] the surgery." (*Id.*)

A medical condition, or medical need, is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Although Johnson's allegations about his medical needs for his shoulder injury are vague, at this stage of the proceedings, the Court assumes without deciding that they are sufficiently serious.

### B. Deliberate Indifference

In their Motions to Dismiss, Defendants Dr. Kelore, Dr. Suddiqui, and Dr. Gore contend that Johnson has failed to allege sufficient facts to indicate that they acted with deliberate indifference. The Court reviews Johnson's allegations against Prison Medical Provider under 28 U.S.C. § 1915(e)(2). The Court will address the actions of each Defendant in turn.

#### 1. Dr. Kelore

Johnson alleges that he "went to [Dr. Kelore] more than (6) six times and nothing was done to fix the problem, and by his action, [Dr. Kelore] left [Johnson] with more problems now [than] before they work[ed] on it." (Compl. 2.) Johnson further alleges that by having more than six appointments with Johnson, Dr. Kelore, "prolong[ed] [Johnson's] medical treatment," and "now

8

the use of [Johnson's] shoulder is weak and with no strength to hold something for a long period of time [and] instead [he] keep[s] dropping things." (*Id.*)

"Where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must allege facts that suggest 'that the delay resulted in substantial harm.'" *Roulhac v. Prison Health Servs., Inc.*, No. 3:10CV408, 2011 WL 6750559, at *6 (E.D. Va. Dec. 23, 2011) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir. 2008)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (alteration in original) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Here, Johnson alleges that by having more than six appointments with Johnson, Dr. Kelore prolonged Johnson's medical treatment and "nothing was done to fix the problem." (Compl. 2.) However, Johnson does *not* allege that Dr. Kelore's actions resulted in a delay of Johnson's receipt of *all* medical treatment. Instead, Johnson's allegations make clear that Johnson received significant medical care from Dr. Kelore because Johnson "went to [Dr. Kelore] more than (6) six times," and during these appointments, "they work[ed] on [his shoulder]." (*Id.*) Further, although Johnson's allegations make clear that he disagrees with both the type of medical treatment provided by Dr. Kelore and the duration of Dr. Kelore's medical treatment – alleging that he has "more problems now [than] before they work[ed] on it" (*id.*) – absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Johnson alleges no such exceptional circumstances.

Moreover, Johnson fails to allege facts indicating that Dr. Kelore knew of and disregarded an excessive risk of harm to Johnson's shoulder during the more than six appointments Johnson had with Dr. Kelore. *Cf. King v. United States*, 536 F. App'x 358, 362 (4th Cir. 2013) (discussing that "the Constitution's protection of rights does not provide a remedy for mere errors in judgment, 'even though such errors may have unfortunate consequences'" (quoting *Grayson*, 195 F.3d at 695–96)). Accordingly, because Johnson fails to allege facts that indicate that Dr. Kelore acted with deliberate indifference, Claim One will be DISMISSED WITHOUT PREJUDICE.

### 2. Dr. Suddiqui

Johnson alleges that Dr. Suddiqui did "treatment before he knew what the problem was and sent [Johnson] to physical therapy, and [Johnson] informed them that there was more pain [than] what was the actual complaint." (Compl. 2.) Johnson also alleges that "[o]nce [he] informed the medical staff, they explain[ed] that it wasn't a medical emergency and that [Johnson] would have to put in for sick call to see the doctor," and the "doctor answer[ed] that [Johnson] had a frozen shoulder, but knew all along what was wrong." (*Id.*)

Johnson's allegations make clear that he received significant medical care for his shoulder from Dr. Suddiqui, including Dr. Suddiqui sending Johnson to physical therapy. (*See id.*) Moreover, although Johnson contends that Dr. Suddiqui provided medical treatment "before he knew what the problem was," Johnson also contends that Dr. Suddiqui "knew all the time" that Johnson "had a frozen shoulder." (*Id.*) Regardless, Johnson fails to plausibly allege that Dr. Suddiqui's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Miltier*, 896 F.2d at 851 (citation omitted).

Instead, Johnson's allegations make clear that medical staff, including Dr. Suddiqui, were responsive to Johnson's medical needs. (*See* Compl. 2.) Despite Johnson's apparent desire to

have emergency treatment for his shoulder and his disagreement with his receipt of physical therapy, Johnson is not entitled to the medical care of his choosing. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6); *Hudson*, 503 U.S. at 9 (citation omitted). Johnson states nothing more than a disagreement with Dr. Suddiqui's professional medical opinion about the appropriate course of treatment, and thus fails to state a cognizable constitutional claim, much less deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6).

Furthermore, with respect to Johnson's allegations regarding pain associated with his physical therapy, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Johnson alleges no extreme circumstances here. *See, e.g., Martinez v. Mancusi*, 443 F.2d 921, 924–25 (2d Cir. 1970) (granting relief when prison doctor forced prisoner plaintiff, without hospital ordered pain medication, to walk out of hospital and stand for meals after plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk).

Accordingly, because Johnson fails to allege facts that indicate that Dr. Suddiqui acted with deliberate indifference, Johnson fails to state an Eighth Amendment claim against Dr. Suddiqui. Thus, Claim Two will be DISMISSED WITHOUT PREJUDICE.

### 3. Dr. Gore

Johnson contends that Dr. Gore "order[ed] shots to [Johnson's] shoulder instead of trying to fix the problem," and "all they [did] was to cover it up to where it is nothing useful or reliable to say that [Johnson] trust[s] to hold anything any more." (Compl. 2–3.)

As an initial matter, Johnson fails to allege facts indicating that Dr. Gore knew of and disregarded an excessive risk of harm to Johnson's health by ordering shots for Johnson's shoulder

11

"instead of trying to fix the problem." (*Id.* at 3.) Despite Johnson's apparent desire to receive a different course of treatment for his shoulder, other than the shots provided by Dr. Gore, Johnson simply lacks entitlement to the medical care of his choosing. *See Wright*, 766 F.2d at 849 (citation omitted); *Hudson*, 503 U.S. at 9 (citation omitted). Johnson states nothing more than a disagreement with Dr. Gore's professional medical opinion about the appropriate course of treatment, and thus fails to state a cognizable constitutional claim, much less deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6).

Additionally, in assessing a claim of deliberate indifference, the Court must also consider the totality of the medical care provided, rather than simply what additional treatment the inmate was denied. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (citing *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999)). Here, Johnson alleges that Dr. Gore "order[ed] shots to [Johnson's] shoulder instead of trying to fix the problem." (Compl. 2–3.) Johnson does not identify any specific additional treatment that Dr. Gore failed to provide him. (*See id.* at 3.) Further, as noted above, in addition to the shots provided by Dr. Gore, Johnson received medical care for his shoulder from Dr. Kelore and Dr. Suddiqui, as well as physical therapy for his shoulder. Under these circumstances, Johnson fails to allege facts indicating that Dr. Gore acted with deliberate indifference when he provided shots for Johnson's shoulder, but did not provide additional treatment to "fix the problem." (*See* Compl. 3); *see also Walker*, 233 F.3d at 501 (citing *Reed*, 178 F.3d at 855). Thus, Johnson fails to state an Eighth Amendment claim against Dr. Gore, and Claim Three will be DISMISSED WITHOUT PREJUDICE.

### 4. Prison Medical Provider

Johnson's allegations about Prison Medical Provider are scarce. Johnson alleges, in sum, that Prisoner Medical Provider "is under (Anthem) which has been at all times, under contract with

Virginia Department of Corrections (VDOC), including Fred L. Johnson," and "Prison Medical Provider violated [Johnson's] Eighth Amendment right to medical care." (Compl. 2, 4.)

A private corporation, such as Prison Medical Provider, cannot be held liable "for torts committed by [its employees] when such liability is predicated solely upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). Johnson has failed to advance any facts that plausibly indicate that Prison Medical Provider has such a policy of denying appropriate medical treatment. Accordingly, Claim Four against Prison Medical Provider will be DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

The Motions to Dismiss (Nos. 32, 36, 41) will be GRANTED. Prison Medical Provider will be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2). Johnson's Motions for Declaratory Judgment (Nos. 45, 46, 47) will be DENIED. Johnson's claims will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 8 August 2019
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

13